UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ARTHUR THOMAS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 11-2408** |
| **BURL CAIN, WARDEN** | **SECTION "H" (6)** |

**REPORT AND RECOMMENDATION**

This matter was referred to the United States Magistrate Judge for the purpose of conducting hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.

Upon review of the entire record, the court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2). Accordingly, it is recommended that the petition be **DENIED WITH PREJUDICE.**

**I. PROCEDURAL HISTORY**

On May 20, 2008, petitioner, Arthur Thomas, presently incarcerated in the Louisiana State Penitentiary, Angola, Louisiana, proceeded to trial before a twelve-member jury in the

Twenty-Fourth Judicial District Court for the Parish of Jefferson on the charge of armed robbery. On that same date, the jury found petitioner guilty as charged. (St. rec., vol. 3, pp. 12-13). On May 29, 2008, the trial court denied petitioner's motion for new trial and sentenced him to imprisonment at hard labor for a term of 99 years, with credit for time served. The court ordered that petitioner's 99-year sentence was to run consecutively with any other sentence that may be imposed upon him and that his sentence was to be served without benefit of parole, probation or suspension of sentence. (St. rec., vol. 3, p. 55).

On April 28, 2009, the Louisiana Fifth Circuit Court of Appeal affirmed petitioner's conviction, but remanded the matter for resentencing because petitioner was not provided with a 24-hour delay between the denial of his motion for new trial and the imposition of his 99-year sentence. *State v. Thomas*, 13 So.2d 559 (La. App. 5 Cir. 2005). On April 5, 2010, following petitioner's resentencing to a 99-year term of imprisonment, the Louisiana Supreme Court denied petitioner's writ application, thereby rendering his conviction and sentence final. *State ex rel. Thomas v. State*, 31 So.3d 361 (La. 2010).

Following the conclusion of his direct appeal proceedings, petitioner sought post-conviction relief. His efforts in this regard culminated on August 19, 2011, when the Louisiana Supreme Court denied his writ application. *State ex rel. Thomas v. State*, 67 So.3d 1253 (La. 2011).

On September 14, 2011, petitioner filed the instant petition for writ of habeas corpus

raising the following claims: 1) He was denied a fair trial when the trial court approved a stipulation that "Crime Scene Technicians Stierwald and Aisha Simon" were experts in the field of latent prints without requiring them to appear in court to prove their expertise; 2) he was denied his right to effective assistance of counsel when trial counsel stipulated to the fact that technicians Stierwald and Aisha Simon were experts in latent prints without requiring that they appear in court and testify with regard to their qualifications; and, 3) the trial court erred in denying his motion for a new trial because the evidence was insufficient to support his conviction.

The State submits that the instant action is timely, but contends that petitioner has failed to exhaust his state court remedies. (Fed. rec., doc. 7, State's Response, pp. 4 and 7). Based upon its review of the record, the court finds that the instant action is indeed timely and that petitioner, contrary to the State's assertion, has exhausted his state court remedies as required under *Rose v. Lundy*, 455 U.S. 509, 102 S. Ct. 1198, 71 L. Ed. 2d 379 (1982). Accordingly, this court shall review the pertinent facts and standard of review, then proceed to an analysis of petitioner's claims.

## II. FACTS[1]

Marc Bercegeay ("Mr. Bercegeay") and Jason Mansfield ("Mr. Mansfield") were

---

[1] The facts are taken from the Louisiana Fifth Circuit Court of Appeal's opinion, *State v. Thomas*, 13 So.3d 603 (La. App. 5 Cir. 2009).

eating lunch at Mr. Bercegeay's apartment when someone, claiming to be "Kevin", knocked on the door. Mr. Mansfield answered the door because Mr. Bercegeay knew someone named Kevin. However, the person at the door was not Kevin. Mr. Bercegeay asked the visitor to identify himself. The man, later identified as petitioner, answered that Mr. Bercegeay knew who he was and what this was about. At that point, petitioner pulled out a gun and instructed Mr. Mansfield to lie down on the floor. Petitioner told Mr. Bercegeay to give him money. Mr. Bercegeay pulled some cash out of his pocket and gave it to petitioner. Petitioner stated that he wanted the "rest of the money" and indicated that he knew Mr. Bercegeay cashed a check that morning. Petitioner grabbed Mr. Bercegeay's wallet and a struggle ensued. Mr. Bercegeay refused to let go of his wallet and petitioner struck Mr. Bercegeay on the head with the gun.

During the struggle between petitioner and Mr. Bercegeay, Mr. Mansfield got up and ran out of the door and called for help. Petitioner grabbed a set of keys and a cell phone and ran out of the back door. As he was calling 911, Mr. Mansfield observed petitioner riding towards I–10 on a bicycle.

The crime was investigated by Deputy Daniel Ordoyne ("Deputy Ordoyne") and Detective Michael Miller ("Detective Miller") of the Jefferson Parish Sheriff's Office. Deputy Ordoyne obtained a description of the perpetrator, which he broadcasted to fellow officers. The deputy also took photos of Mr. Bercegeay's injuries.

Mr. Bercegeay indicated to the officers that a woman named Terry, an old drug acquaintance, may be involved in the robbery. Mr. Bercegeay arrived at this conclusion because he saw Terry pass by his apartment about thirty seconds after the robbery. Mr. Bercegeay told Detective Miller that he called his stolen cell phone about ten minutes after the incident and someone, who identified himself as "Hawk, Eddie or Big A" answered the phone.

Shortly after the robbery, police found a bicycle and a cap on the side of a building on the I–10 Service Road about four blocks from where the robbery took place. Mr. Mansfield recognized the cap as the one the perpetrator was wearing, and the bike as the one the perpetrator was riding as he left the scene.

Mr. Bercegeay described the perpetrator to police officers as a tall, heavy-set black man wearing a baseball cap, dark jeans, and shirt. The following day, Mr. Bercegeay identified petitioner in a photo lineup presented to him by investigating officers. Mr. Mansfield also identified petitioner in a separate photo lineup.

Mr. Bercegeay, through his own investigating, learned that a man matching petitioner's description and riding a silver bike frequented a nearby scrap metal yard. The manager of the scrap metal yard knew the man as "Big A." Another employee of the business described Big A and said his name was Arthur. Mr. Bercegeay gave this information to police investigators.

As a result of the investigation, petitioner was arrested and charged with the crime.

## III. **STANDARD OF REVIEW**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. §2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact. Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2). *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams[ v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)]that an unreasonable application

is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also Hill*, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

## IV.  ANALYSIS

### Claims 1): Trial Court Improperly Allowed Stipulation to Expertise of Crime Technicians Without Requiring Them to Appear in Court

Petitioner argues that he was denied the right to a fair trial when the trial court approved a stipulation as to the expertise of crime technicians Stierwald and Aisha Simon without requiring them to appear in court.

The State argues that petitioner's claim is procedurally barred.  In connection with petitioner's post-conviction application, the state district court denied petitioner's claim on procedural grounds, specifically, La.C.Cr.P. art. 930.4(B) and (C), due to petitioner's failure to raise his claim at trial or on appeal.  The state district court provided:

> This claim is procedurally barred from review.  If the application raises a claim the petitioner knew about, but inexcusably failed to raise prior to conviction, the court may deny relief.  LSA-C.Cr.P. art. 930.4(B).

>Additionally, if the application alleges a claim that was raised at trial, but was inexcusably not pursued on appeal, the court may deny relief. LSA-C.Cr.P. art. 930.4(C). The petitioner's claim is barred because it could have been, but was not, raised at trial or on appeal. Under La.C.Cr.P. art. 930.4, such claims should be denied.

*State v. Thomas*, No. 2007-4055 (24th JDC June 1, 2010) (unpublished opinion).[2]

Thereafter, the Louisiana Fifth Circuit likewise denied the instant claim as procedurally barred under La.C.Cr.P. arts. 930.4(B) and (C), providing:

>With regard to relator's first claim regarding the trial court's qualification of the State's expert witnesses, we agree with the ruling of the trial judge that this claim is procedurally barred from review pursuant to LSA-C.Cr.P. art. 930.4(B) and (C).

*Thomas v. Cain*, No. 2010-KH-0588 (La. App. 5 Cir. July 9, 2010) (unpublished opinion).[3]

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the federal claim and adequate to support that judgment. *Coleman v. Thompson*, 501 U.S. 722, 731-32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir.1997); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir.1995) (citing *Harris v. Reed*, 489 U.S. 255, 260, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989)). This "independent and adequate

---

[2] A copy of the state district court's unpublished opinion is contained in the St. rec., vol. 5.

[3] Copies of the state appellate court's unpublished opinion are contained in the St. rec., vols. 2 and 5.

state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review. *Amos*, 61 F.3d at 338.

Procedural default does not bar federal court review of a federal claim raised in a habeas petition unless the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar. *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902. When the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, it is presumed that the court relied upon the same grounds as the last reasoned state court opinion. *Ylst v. Nunnemaker*, 501 U.S. 797, 802, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar. *Amos*, 61 F.3d at 338. To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. *Glover*, 128 F.3d at 902. A state procedural bar is presumptively adequate when the state court expressly relies on it in deciding not to review a claim for collateral relief. *Id*.

In the instant situation, the Louisiana Fifth Circuit Court of Appeal issued the last reasoned decision, denying petitioner's claim, that the trial court erred with respect to the qualification of experts, based on the procedural ground that petitioner failed to raise his claim either at trial or on appeal, citing La.C.Cr.P. art. 930.4(B) and (C) in support of its

finding. *Thomas*, No. 10-KH-0588, p. 1.

It is well-established that La.C.Cr.P. art. 930.4(B) and (C) are independent and adequate state court remedies sufficient to procedurally bar claims for federal habeas review. *See Simmons v. Cain*, 2008 WL 2185422, *5-8 (E.D. La. 2008) (Berrigan, J.); *Rose v. Prince*, 2009 WL 2922801, *4 (E.D. La. 2009) (Vance, J.). A federal habeas petitioner, however, may be excepted from the procedural default rule if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice." *Glover*, 128 F.3d at 902 (citing *Coleman*, 501 U.S. at 731-32); *Amos*, 61 F.3d at 338-39 (citing *Harris*, 489 U.S. at 262; *Engle v. Isaac*, 456 U.S. 107, 129, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982)).

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). The mere fact that petitioner failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. *Id*. at 486.

In this case, petitioner provides no basis to support a finding that he had good cause for failing to raise the instant claim at trial or on direct appeal. "The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether

'prejudice' is shown." *Hogue*, 131 F.3d 466, 497 (5th Cir.1997) (citing *Engle*, 456 U.S. at 134 n. 43). Having failed to show an objective cause for his default, the court need not determine whether prejudice existed, and petitioner has not alleged any actual prejudice. *Ratcliff v. Estelle*, 597 F.2d 474 (5th Cir.1979) (citing *Lumpkin v. Ricketts*, 551 F.2d 680, 681-82 (5th Cir.1977)).

The instant claim is therefore procedurally barred from review by this federal habeas corpus court absent a showing that a fundamental miscarriage of justice will occur if the merits of the claim are not reviewed. *Hogue*, 131 F.3d at 497 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992)). To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986); *accord Murray*, 477 U.S. at 496; *Glover*, 128 F.3d at 902. To satisfy the factual innocence standard, petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to his guilt. *Campos v. Johnson*, 958 F.Supp. 1180, 1195 (W.D. Tx.1997) (footnote omitted); *Nobles v. Johnson*, 127 F.3d 409, 423 n. 33 (5th Cir. 1997), *cert. denied*, 523 U.S. 1139, 118 S.Ct. 1845, 140 L.Ed.2d 1094 (1998) (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.") When the petitioner has not adequately asserted his actual innocence, his procedural default

cannot be excused under the "fundamental miscarriage of justice" exception. *Glover*, 128 F.3d at 903.

Petitioner does not present and the record does not contain evidence that suggests his actual innocence. Accordingly, petitioner has failed to overcome the procedural bar to his claim that the trial court erred in approving the stipulation as to the crime technicians' expertise without requiring them to come to court and prove their expertise.

### Claim 2) Ineffective Assistance of Counsel

Petitioner argues that he was denied his right to effective assistance of counsel by virtue of counsel's stipulation to the expertise of the crime technicians without requiring them to come to court and offer testimony with regard to their qualifications. In addressing petitioner's ineffectiveness claim, the state district court first set forth applicable federal law, along with corresponding state law.

> It is clear that the petitioner has a Sixth Amendment right to effective legal counsel. Under the well-known standard set out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and *State v. Washington*, 491 So.2d 1337 (La. 1986), a conviction must be reversed if the defendant proves (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's inadequate performance prejudiced defendant to the extent that the trial was rendered unfair and the verdict suspect. *State v. Legrand*, 2002-1462 (La. 12/3/03), 864 So.2d 89.
>
> To be successful in arguing a claim of ineffective assistance of counsel, a post-conviction petitioner must prove deficient performance to the point that counsel is not functioning as counsel within the meaning of the Sixth Amendment. A petitioner must also prove actual prejudice to the point that the

> results of the trial cannot be trusted. It is absolutely essential that both prongs of the *Strickland* test must be established before relief will be granted by a reviewing court.
>
> Furthermore, there is a strong presumption that counsel's performance is within the wide range of effective representation. Effective counsel, however, does not mean errorless counsel and the reviewing court does not judge counsel's performance with the distorting benefits of hindsight, but rather determines whether counsel was reasonably likely to render effective assistance. *State v. Soler*, 93-1042 (La. App. 5 Cir. 4/26/94), 636 So.2d 1069, 1075.

*Thomas*, No. 2007-4055, p. 1.

Thereafter, the state district court proceeded to apply the above law to petitioner's specific claim.

> [T]he petitioner claims that his attorney was ineffective by stipulating [to] the qualifications of the crime lab technicians who lifted and identified the latent prints. Petitioner argues that counsel was ineffective by not calling them to testify, and by not addressing their qualifications before accepting them as experts in their fields.
>
> However, petitioner does not present any evidence supporting his claim. He does not present any evidence to show error in the stipulation that these individuals were in fact experts in their fields, or in their retrieving and analysis of the latent prints. He does not present any evidence that the outcome would have been any different if counsel would have called these individuals to testify and state their qualifications from the witness stand, nor does he present any evidence of what would have been proven with confrontation of these experts in court. Petitioner's argument is merely speculative.

*Id*. at p. 2.

Based upon petitioner's failure to support his claim, the district court concluded: "The

13

court finds as a matter of law that the petitioner has failed to meet his burden of proof or to prove a violation of the *Strickland* standard. He has not established that either prong of the *Strickland* standard has been violated." *Id.*

This court finds that the above analysis does not represent an unreasonable application of *Strickland* to the facts of this case. Thus, the instant claim for habeas corpus relief is without merit.

**Claim 3): Insufficiency of Evidence**

Petitioner argues that the trial court erred in denying his motion for a new trial because the evidence was insufficient to support his armed robbery conviction. In support of his argument, petitioner asserts that there was no evidence presented which corroborated Jason Mansfield's version of events and that, because Mansfield "changed his story several times", his testimony was not reliable. (Fed. rec., doc. 1, p. 23).

In addressing this issue on direct appeal, the Louisiana Fifth Circuit Court of Appeal first examined applicable federal law and state law.

> The constitutional standard for testing the sufficiency of the evidence requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt.[4] When circumstantial evidence forms the basis for a conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence

---

[4] *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

> of the main fact may be inferred according to reason and common experience.[5] The rule as to circumstantial evidence is, assuming every fact to be proved that the evidence tends to prove, in order to convict, must exclude every reasonable hypothesis of innocence.[6] When circumstantial evidence forms the basis for a conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience.[7] This statutory test works with the *Jackson* sufficiency test to evaluate whether all evidence, direct or circumstantial, is sufficient to prove guilt beyond a reasonable doubt to a rational trier of fact.[8]

*Thomas*, 13 So.3d at 606.

Thereafter, the state appellate court examined the elements which must be proven to support an armed robbery conviction.

> To support a conviction for armed robbery, the State must prove beyond a reasonable doubt that there was a taking of anything of value from the person of another by use of force or intimidation while armed with a dangerous weapon. A gun used in connection with and at the scene of a robbery is as a matter of law a dangerous weapon.

*Thomas*, 13 So.3d at 606 (footnotes omitted).

The Louisiana Fifth Circuit next reiterated the argument offered by petitioner in support of his insufficiency of evidence claim.

---

[5] *State v. Williams*, 99-223 (La. App. 5 Cir. 6/30/99), 742 So.2d 604, 608.

[6] LSA-R.S. 15:438.

[7] *State v. McFarland*, 06-970 (La. App. 5 Cir. 5/29/07), 960 So.2d 1132, 1136-1137, *writ denied*, 07-1448 (La. 1/7/08), 973 So.2d 732.

[8] *State v. Watson*, 08-214 (La. App. 5 Cir. 8/19/08), 993 So.2d 779, 783-784.

> [Petitioner] argues the evidence was insufficient because of Mr. Mansfield's conflicting testimony. [Petitioner] argues that Mr. Mansfield told the 911 operator there were other witnesses present but told the detective that only he and Mr. Bercegeay were present in the apartment at the time of the robbery. [Petitioner] argues that Mr. Mansfield testified at trial that no other witnesses were present, but he later stated that he could not recall but there may have been others there.
>
> [Petitioner] argues that the evidence does not support Mr. Mansfield's testimony and that the many inconsistencies combined with the lack of any corroborating evidence all rebut this conviction.

*Thomas*, 13 So.3d at 606-607.

Finally, the state appellate court rejected petitioner's insufficiency of evidence claim based upon the following analysis.

> Initially, Mr. Mansfield testified that he and Mr. Bercegeay were alone at the time of the incident. On cross-examination, after hearing the 911 tape that was played, he recognized that he told the 911 operator others were there. On redirect, however, the matter was clarified. Mr. Mansfield agreed that what he said on the 911 tape was in reference to neighbors who heard what was happening and came to help Mr. Bercegeay.
>
> It appears another discrepancy at trial occurred when Mr. Mansfield acknowledged that he told the police in his statement that defendant produced a black weapon from his waistband that was a .45, which is a semi-automatic weapon. Mr. Mansfield testified at trial, however, that the gun was a "big black automatic gun."
>
> Even assuming these discrepancies were not explained, they go to the credibility of the witness. The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. It is not the function of the appellate court to assess credibility or reweigh the evidence.
>
> [Petitioner] also asserts there is a lack of any corroborating evidence. However, it is noted that Mr. Mansfield testified regarding several facts that

were corroborated by Mr. Bercegeay's testimony.[9] Both victims testified that Mr. Mansfield was at Mr. Bercegeay's apartment, that Mr. Mansfield opened the door, and that, when [petitioner] knocked on the door, he claimed to be Kevin. Both Mr. Bercegeay and Mr. Mansfield testified that [petitioner] pulled out a gun and told Mr. Mansfield to lie down on the floor. Both testified that [petitioner] wanted money, that a struggle ensued, and that Mr. Mansfield ran for help.

As Mr. Mansfield called 911, he saw the perpetrator he later identified as [petitioner] leave on a bicycle and told the operator in what direction [petitioner] was heading. Mr. Mansfield was taken to a location about four blocks from the robbery where a bicycle was found. He recognized the bicycle as the one [petitioner] was riding. Fingerprints lifted from the recovered bicycle matched [petitioner's] fingerprints.

Based on the foregoing, we find the evidence was sufficient to support [petitioner's] conviction for armed robbery. Accordingly, we find no merit in this assignment.

*Thomas*, 13 So.3d at 607 (footnote added).

This court finds that the above does not represent an unreasonable application of the law enunciated in *Jackson*, *supra*, to the facts of this case. Accordingly;

## RECOMMENDATION

It is hereby **RECOMMENDED** that the application for federal habeas corpus relief filed on behalf of petitioner, Arthur Thomas, be **DENIED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 14 days after

---

[9]Mr. Bercegeay died of unrelated causes before the trial on the merits. The transcript of his testimony at the motion to suppress the identification hearing was read to the jury at trial.

being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996)(*en banc*).[10]

New Orleans, Louisiana, this __17th__ day of ____November____, 2011.

_____
LOUIS MOORE, JR.
United States Magistrate Judge

---

[10] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to fourteen days.